**SIGNED THIS: November 30, 2023**

_____

**Mary P. Gorman**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.       21-70695 |
| BRANDEE MARIE BRASHEAR, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JEFFREY D. RICHARDSON, | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No.      21-07035 |
| | ) | |
| HECTOR REYES, | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

Before the Court after trial is an adversary complaint filed by the Chapter

7 Trustee of the bankruptcy estate of Brandee Marie Brashear seeking to avoid

and recover an alleged transfer of $14,000 made by the Debtor to Hector Reyes.

According to the Trustee, the transfer was made without adequate consideration and thus was a fraudulent conveyance. Because the Trustee met his burden of proof as to $12,360 of the transfer, a judgment will be entered against the Defendant and in favor of the Trustee in that amount.

## I.      Factual and Procedural Background

The Debtor, Brandee Marie Brashear, filed her voluntary petition under Chapter 7 on September 29, 2021. Jeffrey D. Richardson was appointed as the Chapter 7 Trustee. On December 10, 2021, the Trustee filed this adversary complaint against Hector Reyes alleging that the Debtor gifted $14,000 to him in January 2020. The Trustee claimed that the Debtor received no equivalent value for the gift and that the Debtor was insolvent at the time. Based on those allegations, the Trustee asserted that the transfer was a fraudulent conveyance that should be avoided and recovered for the benefit of the Debtor's creditors. Mr. Reyes answered the complaint denying several of the material allegations, including allegations that the Debtor did not receive equivalent value for the transfer and that the Debtor was insolvent when the transfer was made. After a lengthy period of discovery, the matter was finally tried on September 28, 2023.

The Trustee called the Debtor as his only witness. She testified that she began living with Mr. Reyes in July 2018 after he was paroled from prison. He lived with her and her child in a trailer she rented in Decatur, Illinois. Mr. Reyes was initially unemployed but soon obtained a job doing industrial maintenance. The Debtor was employed at various minimum wage jobs during

the same period. Although the Debtor and Mr. Reyes apparently became engaged at some point, they never married. Mr. Reyes had three children from a prior relationship who also later came to live with the Debtor and Mr. Reyes.

In April 2019, the Debtor's father died, and she inherited approximately $33,000. Although she was working at the time of her father's death, she stopped working shortly thereafter because she gave birth to a son fathered by Mr. Reyes in mid-May. She testified that she spent some of the inheritance on baby expenses, general living expenses, and legal fees for Mr. Reyes to get his license restored. She and Mr. Reyes also took their new baby, her child, and his three children on a vacation. By early 2020, she had about $14,000 of the inheritance left.

Mr. Reyes purchased a home in Argenta, Illinois, in January or February 2020, and he and the Debtor along with all five children moved there in February. Mr. Reyes obtained a mortgage to purchase the home from Busey Bank. The Debtor said that, because she was not working at the time, Busey Bank did not want her to be included in the purchase or on the mortgage. Because Mr. Reyes did not have good credit, he needed a substantial down payment for the purchase, and the Debtor gave him $12,360 for that purpose. She identified copies of the cashier's check and her bank statements evidencing that transfer. She said that the bank required her to sign a

statement that the transfer was a gift, but she had been unable to find or obtain a copy of the document she signed.[1]

The Debtor said that, at the time of the transfer, she retained less than $2000 in her several bank accounts, had minimal amounts of personal property worth between $500 and $1000, and owned a 1998 Honda vehicle worth about $1000. She said that she also owned a Traverse vehicle that she had purchased used for about $30,000, putting about $1500 down and financing the balance. She said that, at the time of the transfer to Mr. Reyes, she believed the Traverse was worth between $4000 and $6000 less than what was owed against it; when she sold it about six months later, she was roughly $7000 to $8000 underwater on the vehicle. She also had about $4000 to $6000 in credit card debt at the time of the transfer to Mr. Reyes.

Mr. Reyes and the Debtor lived with the children at the Argenta property until February 2021 when she and her two children left. She filed her bankruptcy later that year, and her scheduled debts exceeded her assets. She denied that Mr. Reyes had ever returned or paid back the down-payment money she had given him.

Under cross examination, the Debtor testified that she and Mr. Reyes supported each other and their children while living together and that they each helped with paying the household bills. She agreed that she did not work after the birth of her son in May 2019 but denied that Mr. Reyes provided all support for the household when she was not working. She said that she used

---

[1] Multiple efforts by both parties to obtain a copy of the gift receipt or other similar document from Busey Bank caused the lengthy delays in completing discovery and getting this matter to trial.

her credit cards and increased the balances on the cards because his income did not cover all their expenses. She admitted that she traded in the Traverse about six months after the transfer but disagreed that the deficiency at the time was less than $1000 as suggested by Mr. Reyes' attorney. She also admitted that she was owed $10,000 in back child support for her older child and that she owned some jewelry. She agreed that Mr. Reyes made the mortgage payments after the house was purchased but asserted that she paid many of the household expenses by charging on her credit cards.

On redirect examination by the Trustee, the Debtor said that she cared for Mr. Reyes' three children during the time that they lived in her rented trailer and after they moved to Argenta. She said that, because she was caring for five children, she was literally trapped and unable to work outside the home. She said that she had run up her credit card balances to almost $14,000 by the time she filed bankruptcy.

Mr. Reyes testified in his defense. He said that he currently works as a foreman for a construction company. He acknowledged that he had been in a relationship with the Debtor, that they had a child together, and that she had given him the cashier's check for $12,360 to use as a down payment on the Argenta house. He agreed that the Debtor was not included in the house purchase at the request of Busey Bank because she was unemployed.

With respect to the Traverse, Mr. Reyes said that he remembered the Debtor trading in the vehicle in September 2020. According to him, the Debtor was given a $15,500 trade-in allowance that was applied against the

approximately $17,000 balance owed on the vehicle, resulting in only a $1500 shortfall. He said that the Debtor owned "tons of jewelry" and other items of personal property. He described the jewelry as a wedding band he purchased, earrings, bracelets, and charms. He also said that he had a joint bank account with the Debtor and that there was "at least some money" in the account when he received the down-payment money from the Debtor.

Mr. Reyes acknowledged that there were times in the relationship when he was unemployed and the Debtor paid all expenses. He also said that, when the Debtor was off work, he paid their expenses. He agreed that the Debtor used credit cards to pay some household expenses when she was not working outside the home. He testified, however, that he paid the mortgage and sometimes paid the Debtor's credit card bills. Under cross-examination by the Trustee, Mr. Reyes admitted that the Debtor cared for his three children throughout the relationship, allowing him to work without incurring child-care expenses.

The Trustee recalled the Debtor as a witness. She said that her mother cared for all the children when she was working. At the conclusion of the testimony, the attorneys briefly argued their positions. The matter is ready for decision.

## II.    Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central

District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters involving the avoidance and recovery of fraudulent conveyances are core proceedings. 28 U.S.C. §157(b)(2)(H). This matter arises from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III.   Legal Analysis

In his complaint, the Trustee alleged that the transfer from the Debtor to Mr. Reyes was constructively fraudulent, relying on §548(a)(1)(B) which provides, in part:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> . . .
>
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer . . . and
> >
> > (ii)(I) was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer[.]

11 U.S.C. §548(a)(1)(B)(i), (ii)(I).

To prevail, the Trustee must prove: (1) there was a transfer of the Debtor's property to Mr. Reyes; (2) the transfer was made within two years of the bankruptcy filing; (3) the Debtor received less than a reasonably equivalent value for the transfer; and (4) the Debtor was insolvent or rendered insolvent as

a result of the transfer. *Chatz v. Stepaniants (In re Fatoorehci)*, 546 B.R. 786,
792-93 (Bankr. N.D. Ill. 2016) (citation omitted). The Trustee has the burden of
establishing each element by a preponderance of the evidence. *Id.* at 793
(citation omitted). Upon prevailing, the transfer is avoided and may be
recovered by the Trustee for the benefit of the Debtor's creditors. 11 U.S.C.
§550(a).

Mr. Reyes does not dispute that he received the $12,360 from the Debtor.
Further, the timing of the transfer is not disputed; it occurred when the
Argenta house was purchased in January or February 2020. The transfer
occurred within the two years before the Debtor filed her bankruptcy. But Mr.
Reyes does dispute that the Debtor did not receive a reasonably equivalent
value for the transfer and that the Debtor was rendered insolvent by the
transfer.

In deciding whether a reasonably equivalent value has been received for
a transfer, a court is required to "determine the value of what was transferred
and to compare it to what was received." *Barber v. Golden Seed Co.*, 129 F.3d
382, 387 (7th Cir. 1997) (citation omitted). Determining what was transferred
here is easy; a copy of a cashier's check for $12,360 was admitted into
evidence, and Mr. Reyes agreed that was the amount he was given by the
Debtor. The Debtor did not acquire an ownership interest in the house
purchased with the funds. Further, the Debtor denied that Mr. Reyes ever
returned the money to her, in whole or part. Mr. Reyes did not claim that he
paid the money back to the Debtor and presented no evidence of any payment

he made to her as reimbursement for her gift. The Trustee's evidence established that the Debtor did not receive anything in consideration for the transfer, leaving the inference to be drawn that she did not receive a reasonably equivalent value for the transfer.

Once the Trustee met his burden of proof on this element, the burden shifted to Mr. Reyes to establish that a reasonably equivalent value had been received by the Debtor. Mr. Reyes' evidence was limited and consisted mainly of his assertion that he made the mortgage payments on the Argenta house after the purchase and thereby provided the Debtor with a place to live during the year after the purchase. But Mr. Reyes' testimony fell well short of what he needed to make his case of reasonably equivalent value. First, he failed to quantify in anyway the value of providing the Debtor with housing. No evidence of value was presented; Mr. Reyes did not even testify as to the amount of his monthly mortgage payment. Second, both the Debtor and Mr. Reyes testified that, over the course of their three or four years together, both had experienced periods of unemployment and both had contributed in various ways to their mutual household expenses. The Debtor also contributed $19,000 of her inheritance to their living expenses, expenses for their baby born in May 2019, and for a vacation that included Mr. Reyes' children from a prior relationship. Mr. Reyes' contribution of making the mortgage payment on the Argenta house was not shown to be greater than the Debtor's contribution of caring for five children during the same period. Nothing in the evidence suggested that Mr. Reyes paid a disproportionate share of household expenses at any time during

the relationship or that he and the Debtor had any agreement about him receiving credit against the down payment by reason of his payment of the mortgage or other household expenses. Thus, nothing presented would support giving Mr. Reyes a credit towards the $12,360 transferred to him based on the mortgage payments he made during the one year that the Debtor lived in the Argenta house. The Trustee prevailed on this element of required proof.

The final element of proof required of the Trustee was that the Debtor was insolvent when the transfer was made or was rendered insolvent by the transfer. Here, the Trustee sought to establish that the Debtor was rendered insolvent by the transfer. An individual is insolvent when the sum of their debts is greater than the sum of their property valued fairly. 11 U.S.C. §101(32)(A). In determining that value, the property transferred and property that may be exempted by the individual are excluded from the calculation. 11 U.S.C. §101(32)(A)(i), (ii).

The Debtor testified that, before the transfer, she had $14,000 left from the inheritance; after the transfer of $12,360, she would have had $1640. She testified that she had several bank accounts, and, including what was left from the inheritance, she had a total of about $2000 in the accounts. She also said that she had limited personal property worth $500 to $1000. Her bank accounts and personal property would be exempt. 735 ILCS 5/12-1001(b). The Debtor testified that she owned a 1998 Honda vehicle worth $1000; the vehicle would be exempt. 735 ILCS 5/12-1001(c). The Debtor admitted being owed $10,000 in back child support. The right to receive such support is exempt.

735 ILCS 5/12-1001(g)(4). She also said that she owned a Traverse vehicle but owed $4000 to $6000 more on the vehicle than it was worth. And she said that she owed $4000 to $6000 in credit card debt when she made the transfer to Mr. Reyes. The Debtor's testimony established that she had no non-exempt property and $8000 to $12,000 in debt after she made the transfer; she was rendered insolvent by the transfer.

Mr. Reyes' defense was again limited and fell well short of what was needed to rebut the Debtor's testimony. He said that there was some money in a joint account, but he failed to suggest how much money and did not directly dispute that the total the Debtor had in her accounts after she made the transfer was $2000. He said that the Debtor owned jewelry and other personal property, but he failed to describe the jewelry or any other items sufficiently to establish that they were worth more than the Debtor said they were worth. The Debtor responded affirmatively when asked whether she owned jewelry, but Mr. Reyes' attorney did not follow-up with questions about the type or value of the jewelry. Mr. Reyes offered nothing to suggest that the Debtor owned jewelry or other items of sufficient value to use up her remaining personal property exemption and overcome her $8000 to $12,000 in debt so as to establish that she was solvent.[2] Finally, Mr. Reyes' recollection of the deficit when the Traverse was sold suggested that only $1500 should have been considered as indebtedness in excess of value for that vehicle. But even if that were true, that

---

[2] To the extent the jewelry included an engagement or wedding ring, an exemption under 735 ILCS 5/12-1001(a) would also be available. *See In re Deacon*, 27 F. Supp. 296 (S.D. Ill. 1939) (finding that Illinois exemption for wearing apparel may include a watch or a ring if not purchased for speculation or ornamentation).

would only reduce the amount of the Debtor's insolvency—not eliminate it all together. The Trustee met his burden of proof; the Debtor was rendered insolvent by the transfer of $12,360 to Mr. Reyes in early 2020.

Based on the above, the transfer of $12,360 by the Debtor to Mr. Reyes should be avoided. 11 U.S.C. §548(a)(1)(B). That sum may be recovered from Mr. Reyes for the benefit of the Debtor's creditors. 11 U.S.C. §550(a).

## IV.    Conclusion

The Trustee established by a preponderance of the evidence that the Debtor made a gift of $12,360 to Mr. Reyes that rendered her insolvent and for which she received no reasonably equivalent value. In finding for the Trustee, however, the Court cautions that the decision is limited to the specific facts presented.

Nothing in the Court's decision should be construed as suggesting that, when individuals join together to live in a household, the day-to-day transfers between them—or to third parties—for the payment of household expenses constitute fraudulent conveyances. This is particularly true where, as here, individuals living together share parenting responsibilities for a child. It is true even if the cash payments made by one individual substantially exceed the payments made by the other. Non-monetary contributions such as the Debtor's provision of child care here must enter into the calculation. It would generally be inappropriate for a trustee to attempt to reconstruct a family's budget and then seek to collect a share of that budget from another family member under a

fraudulent conveyance theory. *See Pergament v. Martino (In re Martino)*, 652 B.R. 416 (Bankr. E.D.N.Y. 2023) (concluding that the trustee not only failed to meet burden of proof that adult son owed room and board to his father, the debtor, based on percentage of the household expenses but also exercised poor judgment in bringing the action in the first place).

Here the Debtor made a large gift so that Mr. Reyes could acquire property in which the Debtor was to have no interest. This case did not involve the reconstruction or reallocation of the Debtor's living expenses or contributions to her household before she filed bankruptcy. Based on such facts, judgment will be entered in favor of the Trustee and against the Defendant.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###